Marcia J. HUFFORD, Richard A. Hufford, Joshua James Penticoff, a minor, Plaintiffs–Appellees, Cross–Appellants,

v.

Roy RODGERS, as Sheriff of Gilchrist County, and Thomas Holt, an individual, Defendants–Appellants, Cross–Appellees.

No. 88–3994.

United States Court of Appeals, Eleventh Circuit.

Sept. 25, 1990.

Julis F. Parker, Jr., Keith C. Tischler, Tallahassee, Fla., for defendants-appellants, cross-appellees.

Anthony J. Salzman, Gainesville, Fla., Terrence M. Brown, Starke, Fla., for plaintiffs-appellees, cross-appellants.

Before EDMONDSON, Circuit Judge, HILL * and HENDERSON, Senior Circuit Judges.

HILL, Senior Circuit Judge:

The appellants, a Florida sheriff and his deputy, challenge the district court's conclusion that the Eleventh Amendment did not protect them from liability under 42 U.S.C. § 1983. The sheriff also contends that substantial evidence did not support a verdict against him in his official capacity, while the original plaintiffs, as cross-appellants, contend that substantial evidence did

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

not support a verdict in favor of the deputy. We affirm.

## FACTS

Marcia J. Hufford received a divorce from her first husband, Dennis Lee Penticoff, in April, 1980, and received custody of her minor child, (Joshua James), during the months of the school year. In September, 1980, Ms. Hufford, who had remarried, moved to a new address in Trenton, Florida.

In October, 1981, Penticoff presented the Gilchrist County Sheriff's Department with a photocopy of his Final Judgment and an affidavit executed that month. Penticoff had stapled the affidavit, which bore no indicia of having been filed in any court proceeding, to the Final Judgment. Carrying only these papers, Deputies Thomas Holt and Bud Dubois arrived at the Hufford's home at about 11:30 that evening, and, without notice, permission or consent, entered the Hufford's home and demanded that the Huffords relinquish Joshua James pursuant to their alleged court order.

Ms. Hufford advised the deputies that the papers they were brandishing were merely her divorce decree, rather than a court order, and that she had legal custody of her child; she then demanded that the deputies contact the sheriff to straighten the matter out. Mr. and Ms. Hufford both testified that Deputy Dubois informed them that Sheriff Rodgers "knew all about this," and then ordered her to relinquish her son, so that they could transfer him to his father's custody. Sheriff Rodgers, however, denied any prior knowledge of the events of that evening.

Both Mr. and Mrs. Hufford also testified that Deputy Dubois threatened them with jail, and that both deputies raised their flashlights in a threatening manner. Deputy Holt, on the other hand, testified that he could not recall any conversation or threats, and Deputy Dubois died before the Huffords initiated this lawsuit.

Later that night, the deputies gave Joshua James Penticoff to Dennis Penticoff at the sheriff's office. Penticoff ultimately fled to Texas with his three-and-a-half year old son, where Ms. Hufford located him after a fifteen month search. The court later granted Ms. Hufford sole and exclusive custody of her son, subject to limited visitation with Penticoff.

## PROCEEDINGS IN THE DISTRICT COURT·

In October, 1985, the Huffords filed a Complaint in the District Court for the Northern District of Florida, alleging that both Sheriff Rodgers and Deputy Holt had seized Joshua in violation of the Civil Rights Act, 42 U.S.C. § 1983. Deputy Holt died during the pendency of this action, and counsel substituted his estate as a party defendant.

After a jury trial, the jury returned a verdict against Sheriff Rodgers only, and the district court entered a judgment on the verdict on November 4, 1988. This appeal followed.

## DISCUSSION

Appellants now challenge the district court's conclusion that the Eleventh Amendment does not· immunize Sheriff Rodgers, (sued only in his official capacity), from liability in this matter. They also contend that substantial evidence did not support the jury's verdict against Sheriff Rodgers. Appellees, on the other hand, as cross-appellants, contend that substantial evidence did not support the jury's verdict in favor of Deputy Holt.

### A. Eleventh Amendment Immunity

Appellants vigorously contend that the Eleventh Amendment protects Sheriff Rodgers from liability under Section 1983. It does not. The question of Eleventh Amendment immunity apparently remains integrally confused with the related, but distinct, concept of state sovereign immunity; we thus begin by untangling the case law, in order to provide guidance both to ourselves and to parties who litigate these issues in the future.

 "[T]he Eleventh Amendment deals only with federal jurisdiction to hear

suits against the state, not with the state's immunity from suit in any forum." *Bartlett v. Bowen*, 816 F.2d 695, 710 (D.C.Cir. 1987). The Eleventh Amendment insulates "... private parties seeking to impose a liability [in federal court] which must be paid from public funds in the state treasury...." *Edleman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). State sovereign immunity, on the other hand, serves to insulate states from lawsuits in their own courts. *See e.g., Hill v. Dept. of Corrections*, 513 So.2d 129, 131–33 (Fla.1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1024, 98 L.Ed.2d 989 (1988). State sovereign immunity may protect Sheriff Rodgers from state claims in state court; *state* immunity, however, has no application to claims, in federal court, under Section 1983.[1]

■ The Eleventh Amendment bars suits in federal court against *state* agencies "when the action is in essence one for the recovery of money from the state...." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). We must therefore determine whether Sheriff Rodgers is an agent of the state (in which case the Eleventh Amendment protects him), or of the county, (in which case it does not). We conclude, as have prior panels of this circuit, that a Florida sheriff is a county official.

In *Tuveson v. Florida Governor's Counsel on Indian Affairs*, 734 F.2d 730, 732 (11th Cir.1984), we noted that when the Supreme Court determines which political entities the Eleventh Amendment protects, it gives "special attention to the state law creating and defining the entity." We also noted four aspects of state law that we consider especially pertinent to the issue: "how state law defines the entity, what degree of control the state maintains over the entity, where funds for the entity are derived, and who is responsible for judgment against the entity." *Id.* at 732.

■ A. *State Law.* As we noted in *Lundgren v. McDaniel*, 814 F.2d 600, 605 n. 4 (11th Cir.1987), the "Florida Constitution indicates that a sheriff is a county officer." That Constitution states:

> (d) COUNTY OFFICERS. There shall be elected by the electors of each county, for terms of four years, a *sheriff,* a tax collector, a property appraiser, a supervisor of elections and a clerk of the circuit court.

Fla. Const., Art. VIII, § 1(d) (emphasis supplied). The Florida Supreme Court, moreover, in *Beard v. Hambrick*, 396 So.2d 708, 711–712 (Fla.1981), held that the Florida Constitution established that "a sheriff is a 'county official' and, as such, is an integral part of the county';" that court also concluded, however, that for state sovereign immunity purposes, "the sheriff is an official of a political subdivision of the state." [2]

B. *State Control.* Although state laws of general application govern Florida sheriffs, their guidance does not necessarily transform the sheriff's office into an agency of the state. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 281, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977). In Florida, moreover, particular statutes specifically permit sheriffs to control the day-to-day operations of their office. *See e.g.,* § 30.53, Fla.Stat. (1987) (statute preserves the independence of sheriffs in matters "concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing and setting of salaries of such personnel"); § 951.061, Fla.Stat. (1987) (county may designate the sheriff as the chief correctional officer for the county correctional system). We discern in these

---

1. The Supreme Court recently clarified that, even in state court, local entities remain subject to suit from federal claims to the same extent as they would be in federal court. In other words, when parties raise *federal* claims (at least, under Section 1983), then federal law must determine whether particular governmental entities are subject to suit. *Howlett v. Rose,* — U.S. —, 110 S.Ct. 2430, 2444, 110 L.Ed.2d 332 (1990).

2. We note parenthetically that after *Howlett v. Rose,* — U.S. —, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), a Florida court's designation of county sheriffs as "political subdivision[s] of the state" will have effect only in cases involving *state* claims in state court.

statutes no intent for state officials to control or supervise the sheriff.

C. *Funding Source.* County taxes fund the sheriff's budget, which the county pays in monthly installments. Any excess at the year's end returns to the county. *See* §§ 30.49, 30.50, Fla.Stat. (1987). The county also pays the sheriff's salary. *See* § 30.50, Fla.Stat. (1987). While the state provides an appeals process, it does not attempt to fund the sheriff's activities. *See* § 30.49, Fla.Stat. (1987).

D. *Funds to Satisfy Judgment.* We note here that no provision of Florida law provides state funds to a Florida sheriff to satisfy a judgment against the sheriff, either in his official or individual capacity. Sheriff Rodgers, in fact, is insured through monies appropriated to him by the Gilchrist County Commission, as part of a self-insurance fund established by sheriffs of the state of Florida. We have often stressed that the Eleventh Amendment is unlikely to protect an entity with "fiscal autonomy." *Fincher v. State of Florida Dept. of Labor and Employment Security,* 798 F.2d 1371 (11th Cir.1986), *cert. den.* 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987). We are satisfied that the parties here could not invoke the State of Florida to pay any judgment on behalf of Sheriff Rodgers.

From this analysis, we conclude that Sheriff Rodgers acted as a county, rather than a state, official. Both parties to this action, however, refer us to Section 768.28(15), Fla.Stat. The State of Florida waived its state sovereign immunity through the enactment of Section 768.28, but added subsection 15 in 1985 in order to exclude federal court actions:

> No provision of this section, or of any other section of the Florida statutes ... shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the United States ...

Appellees assure us that this section has no application to the question at issue here, since, as we have noted, the Florida legislature enacted the passage in 1985, while the instant action accrued in 1981. Every

state, of course, has the option of retaining its Eleventh Amendment immunity or of eliminating it by waiver. In this case, however, the quoted passage is simply irrelevant to the issues we evaluate today. By previous act, the Florida legislature had intentionally waived its sovereign immunity; the quoted amendment reflects only its care *not* to waive, by accident, its Eleventh Amendment immunity as part of the same legislation.

At any rate, since sheriffs in Florida act only on behalf of the counties they serve, we hold that the Eleventh Amendment does not protect Florida sheriffs from liability under section 1983. In so doing, we reaffirm our holdings in *Lucas v. O'Loughlin,* 831 F.2d 232, 235 (11th Cir.1987), *cert. den. sub. nom. St. Johns County v. Lucas,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988) and *Lundgren v. McDaniel,* 814 F.2d 600, 605 n. 4 (11th Cir.1987).

### B. Substantial Evidence and the Verdicts Against Sheriff Rodgers and Deputy Holt

The jury decided that Sheriff Rodgers improperly trained (or supervised) his deputies, and we agree that substantial evidence supported that verdict. We also agree that ample evidence supported the jury's verdict that Deputy Holt acted in good faith, in light of clearly established law and the information that he possessed at the time. We have never required law enforcement officers, detailed to accompany their seniors at the service of warrants, to discount their seniors' assurances, and demand the right to individual inspection and evaluation of warrants, supporting affidavits, and other papers, before obeying those seniors' instructions.

### CONCLUSION

We therefore AFFIRM the judgment of the district court. AFFIRMED.