940 F.2d 1491
 Alfredo RIVAS, Plaintiff-Appellee,
v.
William A. FREEMAN, Jr., Sheriff of Monroe County, Fla.,
C.A. Mikell, Deputy, Deputy Foy, Defendants-Appellants,
Terry Olsen, Richard Dugger, Leonard Flynn, State of
Florida, Phillip Ware and Bernard Williams, Defendants.
 No. 88-5377.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 9, 1991.
 
 Pamela Lutton-Shields, Asst. Atty. Gen., Tallahassee, Fla., for Olsen, etc.
 Julius F. Parker, Jr., Tallahassee, Fla., for Freeman, etc.
 John Elliott Leighton, Leesfield & Blackburn, P.A., Miami, Fla., for Rivas.
 Appeal from the United States District Court for the Southern District of Florida.
 Before HATCHETT and EDMONDSON, Circuit Judges, and PECKHAM*, Senior District Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this case where an arrest and incarceration resulted from misidentification and the lack of policies, procedure, and standards, we affirm the district court's award of damages against the Sheriff, but reverse the award against the Sheriff's deputies.
 
 FACTS
 
 2
 In March 1982, Alfredo Falcon Rivas and two other young men, Gerardo Napoles and Petro Rubi, were traveling in a light blue Camaro automobile in the Florida Keys (Monroe County). As they traveled south on U.S. 1 in Marathon, Deputy Carolyn Foy, Monroe County Sheriff's Office, initiated a roadside stop. Deputy Foy stated in her police report that she made the stop after receiving a radio message from the Sheriff's office informing all marked units to stop a light blue Camaro heading southbound on U.S. 1. Another deputy, C.A. Mikell, joined Foy after she had made the stop.
 
 
 3
 After stopping the car, Deputy Foy requested a driver's license and registration from the driver, Napoles. Neither Napoles nor Rivas spoke English, thus Napoles's thirteen year-old nephew, Rubi, translated the officer's request. A computer check revealed that Napoles's driver's license was invalid. Further questioning revealed that Napoles did not have the car's registration, and the tag on the car belonged to his truck.
 
 
 4
 During the deputies' conversation with Napoles and his nephew, Rivas was seated in the back seat of the car. After learning that Napoles's driver's license was invalid, Officer Foy requested identification documents from Rivas. Rivas produced a Florida driver's license, a United States Immigration and Naturalization card, and a social security card. The documents listed Rivas's full name, date of birth (February 21, 1952), address in Marathon, a physical description (5' 4" tall, 143 pounds with black hair), and a social security number of coj-tj-ztal
 
 
 5
 Deputy Mikell radioed all or some of this descriptive information to the Monroe County Sheriff's Department. The Sheriff's Department dispatcher conducted a computer search on Rivas's driver's license and received a response that an Alfredo Celestino Rivas, 5' 5" tall, 165 pounds with a social security number of cqm-zm-hvbuand an address in Leisure City, Dade County, Florida, was under supervision by the State of Florida Department of Corrections, Probation, and Parole Services (Department). The computer response also gave instructions to call that department for further information.
 
 
 6
 At the deputies' request, the sheriff's office dispatcher called the Department in Marathon for instructions prior to Rivas's arrest. At trial, the dispatcher could not recall whether she told the deputies about Rivas's probationary status over the radio.
 
 
 7
 Terry Olsen, a probation officer, received the call from the dispatcher regarding Rivas. Olsen telephoned the Department's Circuit Office in Miami and spoke with a Deputy Circuit Administrator, Philip Ware, who told Olsen that Alfredo Rivas was on probation in Dade County and did not have a travel permit. Without checking the Department's files to verify the information or determine the current status of the probationer, Ware instructed Olsen to detain Rivas.
 
 
 8
 Believing that Alfredo Falcon Rivas was Alfredo Celestino Rivas, Olsen telephoned the Monroe County Sheriff's Department and instructed the dispatcher to have Rivas detained. The facts are in dispute as to whether Rivas had been arrested and transported to the Monroe County Police Substation prior to Olsen's instructions to detain him.
 
 
 9
 Mikell transported Rivas to the Monroe County Police Substation in Marathon after telling Rivas that the "county was claiming for him" because he was traveling outside his county of residence without permission from his probation officer. Rivas repeatedly told the deputies that he did not need permission to travel because he was not on probation. Once at the substation, a Spanish-speaking employee of the Sheriff's Department joined Rivas in an interrogation room and explained to him that he was being detained for Dade County for probation violation.
 
 
 10
 Olsen (Probation) later talked face-to-face with Rivas, but through an interpreter. During this conversation, Olsen had a computer print out containing the name, address, date of birth, social security number, and physical description of Alfredo Celestino Rivas. Olsen asked Rivas his name, and Rivas answered "Alfredo Rivas." Rivas also told Olsen that he was not on probation. When Olsen requested Rivas's identification, Rivas produced the same documents that he had given to the deputies. Olsen testified that he did not examine Rivas's identification, nor did he compare the information that Rivas gave him with the computer print out containing the description of the person of similar name actually on probation.
 
 
 11
 When once again asked his name, Rivas answered "Alfredo Rivas Falcon" and told Olsen that he lived in Marathon, worked at the Faro Blanco restaurant, and that he had never been arrested. Nevertheless, Olsen decided that Rivas was trying to change his name; thus, Olsen left Rivas in custody. Deputy Mikell fingerprinted Rivas and completed arrest forms without making any further efforts to properly identify him. After being fingerprinted and photographed, Rivas was taken to a foul smelling holding cell containing four other inmates, but only two beds. Consequently, Rivas was without a bed. He was not given shaving items nor a change of clothing.
 
 
 12
 On Saturday, March 15, 1982, sheriff's deputies transported Rivas to the Key West jail in handcuffs and shackles. The Magistrate's Action Form indicates that Rivas appeared before a state of Florida judge within thirty-six hours after his arrest. At the time of his deposition, the state judge could not remember the proceedings. Rivas does not remember ever appearing before a judge during his stay at the Key West jail. Additionally, the Magistrate's Action Form noted that Rivas did not speak English, and neither Rivas nor the judge could recall whether an interpreter or a lawyer was present during Rivas's first appearance.
 
 
 13
 Rivas remained at the Key West jail until March 20, 1982, six days from the initial stop. On that date, an extradition and transportation officer noticing that Rivas had not been transported from Key West, and upon his own initiative, transported Rivas to Miami. In other words, Rivas had been forgotten. Once in Miami, the Miami booking officer realized that the wrong person had been arrested and released Rivas. Since Rivas had no money or any of the possessions taken from him as a result of the arrest, the transportation officer took Rivas back to Marathon.
 
 PROCEDURAL HISTORY
 
 14
 In December 1984, Rivas filed this lawsuit in the United States District Court for the Southern District of Florida alleging constitutional and civil rights violations, pursuant to 42 U.S.C. Sec. 1983. As defendants Rivas named Deputies Foy and Mikell; Louis Wainwright, Secretary of the Florida Department of Corrections; Leonard Flynn, Director of the Department of Corrections, Probation and Parole; Terry Olsen, probation officer; Phillip Ware, Department of Correction, Probation and Parole Administrator in Miami; Bernard Williams, probation officer; William Freeman, Monroe County Sheriff; and the state of Florida. After some confusion, Rivas stipulated that he sought damages against the officials in their official capacities.
 
 
 15
 Following a bench trial, the district court awarded Rivas $100,000 in compensatory damages holding all of the officials liable jointly and severally. The district court entered judgment in favor of the state of Florida based on eleventh amendment immunity. Except Sheriff Freeman, Deputy Foy, and Deputy Mikell, all the officials settled this case with Rivas, and this court dismissed the appeal against them. Those three are appellants in this appeal.
 
 CONTENTIONS
 
 16
 Sheriff Freeman and Deputies Foy and Mikell contend that they were entitled to qualified and eleventh amendment immunity. The Sheriff and the deputies further contend that they did not violate Rivas's constitutional rights during Rivas's arrest and detention.
 
 ISSUES
 
 17
 We address the following issues on appeal: (1) whether Sheriff Freeman and his deputies were entitled to qualified immunity or to eleventh amendment immunity; and (2) whether Sheriff Freeman and his deputies violated Rivas's constitutional rights.
 
 DISCUSSION
 A. Qualified Immunity
 
 18
 The Sheriff and his deputies contend that the district court erred in ruling that they were not entitled to qualified immunity as a matter of law. They argue that the arrest and detention of Rivas were performed in good faith under the directions of the Department of Probation and Parole Services. Additionally, they argue that under Florida law, a law enforcement officer who makes an arrest at the direction of another law enforcement officer has probable cause for that arrest as a matter of law. Nelson v. State, 188 So.2d 353 (Fla. 3rd DCA 1966). Thus, they contend that the district court erred in denying their claim of qualified immunity.
 
 
 19
 In evaluating the deputies' claim to qualified immunity, we apply the following standard: "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate the clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982). In Harlow, the Supreme Court further stated that if the law regarding an individual's constitutional or statutory rights is clearly established, the qualified immunity defense ordinarily should fail. Harlow, at 819, 102 S.Ct. at 2738.
 
 
 20
 The district court denied the deputies' claim to qualified immunity noting that their combined conduct violated Rivas's clearly established constitutional rights. We first note that Rivas's complaint alleged constitutional deprivations pursuant to 42 U.S.C. Sec. 1983 against the deputies in their official capacities. The Supreme Court in Harlow states that qualified or good faith immunity is an affirmative defense available to government officials sued in their individual capacities for civil damages based upon their discretionary acts. Harlow, at 815, 102 S.Ct. at 2736. This is an official-capacities-lawsuit; thus, we hold that a qualified immunity defense is not available in this lawsuit.
 
 B. Eleventh Amendment Immunity
 
 21
 The Sheriff and deputies also contend that the district court erred in ruling that they were not entitled to eleventh amendment immunity. They argue that the eleventh amendment to the United States Constitution is an absolute bar to suits by individuals against a state or its agencies in federal court. Gamble v. Florida Department of Health and Rehabilitative Services, 779 F.2d 1509 (11th Cir.1986).
 
 
 22
 We review the deputies' eleventh amendment claim under a plenary standard. Gamble, at 512. Our recent decision in Hufford v. Rodgers, 912 F.2d 1338 (11th Cir.1990) is controlling on this claim. In Hufford, we held that Florida sheriffs and their deputies are county officials and not state officials. Hufford, at 1342. Because the funds used to satisfy assessments of liability against sheriffs and their deputies are not paid from the state's treasury, we hold in this case that the eleventh amendment does not protect Florida sheriffs and deputies from liability for claims brought pursuant to 42 U.S.C. Sec. 1983.
 
 LIABILITY
 A. Sheriff Freeman
 
 23
 In addition to his assertions of qualified immunity and eleventh amendment immunity, Sheriff Freeman also contends that the district court erred in assessing liability against him because: (1) he was not personally involved in Rivas's arrest and detention; (2) his department's policies and procedures did not result in a deprivation of Rivas's constitutional rights; and (3) Rivas's complaint alleges and his evidence proved mere negligence, which is an insufficient basis for a cause of action for deprivation of liberty pursuant to 42 U.S.C. Sec. 1983.
 
 
 24
 Under certain circumstances, a law enforcement agency's failure to adequately train its officers may constitute a "policy" giving rise to governmental liability. See Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Such liability may be imposed for a single decision by policy makers "under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Additionally, this court has held that an official may be liable where the custom or policy established resulted in deliberate indifference to constitutional rights. Zatler v. Wainwright, 802 F.2d 397 (11th Cir.1986). Thus, liability may be imposed due to the existence of an improper policy or from the absence of a policy.
 
 
 25
 The district court found Sheriff Freeman liable because he failed to establish sufficient and appropriate procedures and policies regarding identification of arrestees, warrantless searches, and computer checks for information. Liability against Sheriff Freeman attaches even though he was not personally involved in Rivas's arrest. The district court found that Sheriff Freeman formulated the policies and customs that resulted in the violation of Rivas's constitutional rights. As Sheriff of Monroe County, Freeman was directly responsible for formulating policies concerning correct and accurate identification of suspects and ensuring that suspects are accounted for while incarcerated. The evidence presented at trial clearly demonstrated that Sheriff Freeman failed to establish such policies. This lack of well-established policies and procedures caused Rivas's arrest, his unnecessary six-day incarceration, and his resulting humiliation.
 
 
 26
 Sheriff Freeman further argues that a single violation of constitutional rights does not amount to an official policy or custom resulting in the deprivation of an individual's constitutional rights. City of Oklahoma v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Rivas presented evidence at trial which established that Sheriff Freeman knew of prior instances of mistaken identity, but allowed his deputies to detain individuals even where discrepancies existed. This failure to adequately train his officers regarding reliable identification techniques, along with his failure to properly account for incarcerated suspects, subject Sheriff Freeman to liability under section 1983. See City of Cincinnati v. Pembaur, 475 U.S. at 481, 106 S.Ct. at 1299. Therefore, we hold that the district court's findings regarding Sheriff Freeman's failure to establish policies and procedures are supported by the record and are not clearly erroneous.
 
 
 27
 Sheriff Freeman also argues that Rivas's complaint alleges mere negligence which is not sufficient to establish a deprivation of liberty interests pursuant to 42 U.S.C. Sec. 1983. Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Rivas, however, alleged and proved deliberate indifference to his constitutional rights as a result of Sheriff Freeman's missing policies and procedures. Thus, Rivas overcame Daniels' holding which bars suits based on mere negligence. See Taylor v. Ledbetter, 818 F.2d 791, 793 (11th Cir.1987).
 
 B. Deputies Foy and Mikell
 
 28
 Deputies Foy and Mikell also contend that the district court erred in finding them liable for Rivas's arrest because Rivas only alleged and proved simple negligence which is an insufficient basis for a constitutional violation under 42 U.S.C. Sec. 1983.
 
 
 29
 To successfully litigate a lawsuit for deprivation of constitutional rights under 42 U.S.C. section 1983, a plaintiff must show violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights. Taylor v. Ledbetter, 818 F.2d 791, 794 (11th Cir.1987). The negligent act of an official causing unintended loss or injury to life, liberty or property does not implicate due process rights under 42 U.S.C. Sec. 1983. Taylor, at 793.
 
 
 30
 The district court found that Deputies Foy and Mikell arrested Rivas despite having information which demonstrated that Rivas's identity was different from that of the person actually on probation. Such a factual finding, though correct, is insufficient to impose liability for deprivation of liberty under 42 U.S.C. Sec. 1983. Unlike the indifference to the providing of policies, procedures, and training on the Sheriff's part, the conduct of the deputies indicate a lack of directions, or at most simple negligence.
 
 
 31
 Although the facts surrounding the arrest are difficult to ascertain, it is clear from Deputy Foy's police report that upon finding Napoles's driver's license invalid, she checked Rivas's license. Since Rivas was the only passenger in the car legally permitted to drive, the deputies acted reasonably in checking his driver's license. Additionally, Napoles admitted to the deputies that the tag on his car belonged to his truck. These facts gave the deputies reasons to identify the occupants of the car. See United States v. Pantoja-Soto, 768 F.2d 1235, 1236 (11th Cir.1985). Furthermore, the deputies' failure to correctly identify Rivas prior to arresting him did not amount to gross negligence or deliberate indifference to Rivas's constitutional rights. All of the deputies' actions flowed from the lack of policies, procedures, and training. Therefore, applying Taylor v. Ledbetter, 818 F.2d 791 (11th Cir.1987), we hold that Rivas failed to show that the deputies deprived him of a constitutionally protected liberty interest subjecting them to liability under section 1983.
 
 CONCLUSION
 
 32
 We conclude that the district court correctly held Sheriff Freeman liable, but it erred in holding Deputies Foy and Mikell liable. Therefore, the district court is affirmed in part and reversed in part.
 
 
 33
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation