Charles COLVIN, Plaintiff

v.

Ronald J. CURTIS, et al., Defendant.

No. 92–274–CIV–FtM–23D.

United States District Court,
M.D. Florida.

July 30, 1993.

**1504**

Harold Miller Stevens, Robert L. Donald, Fairway Office Center, Ft. Myers, FL, for plaintiff.

Kenneth W. Sukhia, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, Michael G. Fink, Fowler, White, Gillen, Boggs, Villareal & Banker, Ft. Myers, FL, Julius F. Parker, Jr., Parker, Skelding, Labasky &

Corry, Tallahassee, FL, J. Michael Hussey, Paul, E. Liles, O'Halloran, Johnson, Waltemyer & Hussey, Ft. Myers, FL, for defendant John J. McDougall, Sheriff.

Thomas E. Spencer, Lee County Attorney's Office, Ft. Myers, FL, for defendant Lee County.

Kenneth W. Sukhia, Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, FL, Michael G. Fink, Fowler, White, Gillen, Boggs, Villareal & Banker, Ft. Myers, FL, J. Michael Hussey, Paul E. Liles, O'Halloran, Johnson, Waltemyer & Hussey, Ft. Myers, FL, for defendant Ronald J. Curtis.

## MEMORANDUM OPINION AND ORDER

GAGLIARDI, Senior District Judge:

Defendants move for judgment as a matter of law [1] or in the alternative for a new trial. For the reasons discussed below, the motion is denied in part and granted in part. Plaintiff moves for attorney's fees and costs pursuant to 42 U.S.C. § 1988. Because Plaintiff is a prevailing party within the meaning of the statute, the matter of fees and costs is hereby referred to Magistrate Judge Swartz.

### I. Factual Background

Around 11:00 p.m. on August 7, 1991, Plaintiff Charles Colvin climbed into his pickup truck and fell asleep. He was inclined to rest in part because of an admitted overindulgence in "Blue Blazers," an ignited mix of Southern Comfort and Sambuca. His truck was parked on private property at the Shell Station in Lehigh Acres.

Deputy Edlin of the Lee County Sheriff's Office arrived on the scene at approximately 1:15 a.m. At 2:00 a.m. on August 8th, Colvin was being treated for trauma and lacerations at the East Pointe Hospital. The intervening forty-five minutes is, substantially, the subject of this litigation.

Deputy Edlin called Deputy Curtis who arrived shortly after Edlin with Special Dep-

---

1. Defendants move for judgment notwithstanding the verdict, however, their motion is deemed made in the correct procedural posture. Pursuant to the 1991 Amendments to the Federal Rules of Civil Procedure, a motion for judgment notwithstanding the verdict pursuant to Rule

50(b) and a motion for a directed verdict pursuant to Rule 50(a) are now both properly called motions for "judgment as a matter of law." *See* Fed.R.Civ.P. 50 (1991 amendments); *Moore's Federal Practice,* § 50.01[1], at 50–19 (Supp. 1992).

uty Murphy. According to their testimony, Plaintiff awoke as Deputies Curtis and Edlin approached his truck. Deputy Curtis asked Plaintiff to step out of the truck. He did so, but when they weren't looking he "darted" back into the vehicle and refused to get out again. When less violent attempts to extract Plaintiff from the vehicle failed, Deputy Curtis decided to use his PR–24 baton, a two foot long, two inch diameter hard impact weapon. He testified that he struck twice, the first blow hit the door area of the pickup and the second glanced off the plaintiff's arm and hit his eye, causing extensive bleeding. One of the officers called for an ambulance.

In contrast, one emergency medical personnel called to the scene testified that the injuries were not consistent with those that would be inflicted by a single "glancing blow." A witness, Roger Flint, testified in a sworn statement that a deputy hit Colvin "a few times." In addition, photographs taken shortly after the incident suggest injury to the Plaintiff far beyond one glancing blow by a PR–24. The photographs [2] show, and the Emergency Department Records of the East Pointe Hospital [3] indicate several facial lacerations on Plaintiff's nose and over his eye. His eye was swollen shut and he had bruises on his back and arm. The eye injury created a secondary cataract in plaintiff's eye for which surgery is required. Plaintiff has not yet had this surgery because he cannot afford it. Plaintiff testified that he did not know sheriff's deputies had "done this to him" until he was taken from his car to a stretcher. He did not remember disobeying any deputy's orders, or "darting" back into his car.

After he was taken to the hospital, he was placed under arrest for driving under the influence and resisting arrest with violence. Those charges were terminated later by a nolle prosequi.

Plaintiff brought suit claiming Deputy Curtis used excessive force in effecting his arrest in violation of 42 U.S.C. § 1983 and that Sheriff McDougall was liable for that claim for maintaining policies in the Lee County Sheriff's Office in deliberate indifference to

Plaintiff's civil rights. He appended state claims of battery and malicious prosecution against Deputy Curtis and Sheriff McDougall under a theory of respondeat superior.

The matter was tried before a jury from April 6, 1993 until April 13, 1993. The jury awarded Plaintiff $20,000 compensatory damages and $9,000 punitive damages against Deputy Curtis for the battery. The jury found there was no malicious prosecution. The jury found that both Sheriff McDougall and Deputy Curtis had violated Plaintiff's constitutional right to be free of the use of excessive force in effecting his arrest. They awarded no compensatory damages as to this constitutional claim, but awarded $100,000 punitive damages against Sheriff McDougall.

Defendants now raise a total of ten arguments in support of their motion for judgment as a matter of law or for a new trial.

## II. Discussion

### A. The 42 U.S.C. 1983 Violation

#### 1. Eleventh Amendment Immunity

■ Defendants argue Eleventh Amendment Immunity is available for Sheriff McDougall and Deputy Curtis. They acknowledge this argument directly contravenes *Hufford v. Rodgers*, 912 F.2d 1338 (11th Cir.), *cert. den.*, 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1990), which held that Florida sheriffs are county, not state officials, and therefore Eleventh Amendment immunity is not available to them. Defendants attempt to save their argument by claiming that *Hufford* did not analyze the specific role of the sheriff which precluded immunity, so it is therefore inapplicable to the instant case.

This argument is without merit. The Eleventh Circuit in *Hufford* made it abundantly clear that its holding was applicable to all sheriffs. The specific role that precluded immunity for the Florida sheriff in that case was his role as sheriff. No factual contingencies relieve Defendants of this Eleventh Circuit rule.

2. Plaintiff's Exhibits 1/A–1/J.

3. Plaintiff's Exhibit 7/A.

### 2. Sheriff's Liability For Policy or Custom

■ Defendant Sheriff McDougall argues no evidence of custom or policy supports the jury's finding that he was liable for the violation of Plaintiff's right to be free of excessive force in effecting his arrest, and therefore he is entitled to judgment as a matter of law. Judgment as a matter of law will be granted if a verdict has "no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." Fed.R.Civ.P. 50(a). When considering such a motion, the court must view all the evidence in the light most favorable to the non-moving party. *Baeur Lamp Co. v. Shaffer*, 941 F.2d 1165, 1169–70 (11th Cir.1991) (citations omitted). Where substantial conflicting evidence is presented such that reasonable people in the exercise of impartial judgment might reach different conclusions, the motion should be denied. *Maccabees Mut. Life Ins. Co. v. Morton*, 941 F.2d 1181, 1184 (11th Cir.1991). Of course, "[m]erely a scintilla of evidence will not be sufficient to avoid a directed verdict; there must be substantial evidence." *Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir.1993) *citing Cunningham v. United States*, 553 F.2d 394, 395 (5th Cir.1977).

Thus the evidence presented must support a reasonable jury's conclusion that Sheriff McDougall is liable on the grounds instructed. The jury was charged that McDougall

> may be liable where you find that plaintiff has been deprived of his constitutional rights and such deprivation was done pursuant to a government custom, policy, ordinance, regulation or decision, whether made by its lawmakers or by those officials whose edicts or acts may be fairly said to represent official policy, the defendant himself is responsible for the injury that was caused.

This charge correctly states the law imputing liability to the Sheriff:

> [a]n official may be liable where the custom or policy established resulted in delib-

erate indifference to constitutional rights. Thus, liability may be imposed due to the existence of an improper policy or the absence of a policy.

*Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991) (citations omitted). That custom or policy need not receive formal approval through the body's official decisionmaking channels before liability can accrue. *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir.1990) *citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978).

A review of all the evidence presented shows that two lines of proof at trial established an evidentiary basis from which the jury could reasonably conclude that a policy or custom of the Lee County Sheriff's Office was the moving force behind the deprivation of Plaintiff's civil rights.

First, Plaintiff's Exhibit 15 is the accreditation manual of Lee County Sheriff's Office. It is the established policy of the Lee County Sheriff's Office, by virtue of the Foreword signed by Sheriff McDougall.[4] According to the manual, it is the responsibility of every officer to "have knowledge of all directives, policies, procedures and rules and regulations contained in this manual."[5] The manual provides in relevant part:

> c. A case involving the use of physical force or defensive force shall be reported in an offense report.
>
> 1) The offense report shall be completed and delivered to the deputy's supervisor as soon as possible after the incident.
>
> 2) Each deputy present, or assisting in an arrest or incident requiring force, shall submit a supplemental written report describing the incident.
>
> d. Supervisors have the following responsibilities:
>
> 2) Upon notification of the use of physical force or defensive force by deputies, the supervisor shall initiate an investigation into the incident, interview all wit-

---

**4.** "[T]he Sheriff of Lee County has established the following policies, procedures, rules and regulations ..." Plaintiff's Exhibit 15, Accreditation Manual, at iii.

**5.** Plaintiff's Exhibit 15, Accreditation Manual, at Preface.

nesses on the scene and utilize the statement form for proper documentation. Photographs must be taken of the arrested and the deputies involved, (with or with-out visible injury present.)

    a) The supervisor shall review the incident report describing the use of force.

    b) The supervisor shall address a memorandum to the Sheriff, via the chain of command, advising of any facts not covered in the report.

Sergeant Webb, Deputy Curtis' superior officer testified that after Plaintiff was injured he never received a written report on the use of force from Deputy Curtis. He never investigated the incident beyond his appearance at the scene the night of the incident. Deputy Edlin, Deputy Schoen, Special Deputy Murphy, and Deputy Vollmer were present on the scene. None of them testified that they knew that they were required to be interviewed by the supervising officer, or that Sergeant Webb actually interviewed them. Sergeant Webb never made a written report to Sheriff McDougall. Moreover, he testified that he did not know how the Lee County Sheriff's office determined excessive force and had never in his thirteen years with the Sheriff's office reported an unauthorized use of force. He denied that it was his responsibility to take written statements from witnesses, or prepare a memorandum for the Sheriff. Sergeant Webb testified that it was Deputy Edlin's responsibility to take care of the paperwork.

In addition, Plaintiff called Ken Harms, an expert in police use of force. He testified that the policy enunciated in the accreditation manual was adequate for the protection of a suspect's civil rights in its use of force provisions. He further testified, however, that this policy was not followed in Plaintiff's case.

In summary, six members of the Lee County Sheriff's Department and Plaintiff's expert testified that the prescribed policy of the Accreditation Manual was not followed in this instance. None of the deputies could recite the requirements of the Manual with respect to use of force. It is true that some requirements of the manual were met. For instance, written statements from those dep-

uties at the scene were introduced into evidence. It appeared that those statements had been requested by Detective Michael Detar. There was no indication, however, that Detective Detar had assumed the role of supervisor pursuant to the accreditation manual, that he was investigating the use of force for possible disciplinary action, or that he made a written report to the sheriff. In fact, Detar testified that he compiled a case report to be sent to the State's Attorney and that his report had nothing to do with a determination of the use of excessive force.

Much of what was in the manual was ignored, and it is telling that those procedures which were not pursued are the procedures most likely to lead to disciplinary action against a deputy, or a finding of wrongdoing against a deputy. It was appropriate for the jury to conclude on the basis of this evidence that the custom of the office was to ignore the accounting for use of force required in the Accreditation Manual. Such an absence of actual policy is a basis for 42 U.S.C. § 1983 liability. *Rivas*, 940 F.2d at 1495 (11th Cir.1991).

Second, Captain Mark Durling of the Lee County Sheriff's Office testified that the "Use of Force Report" and the "Obstruction of Justice Report" used by the Sheriff's office were one and the same. Deputy Curtis testified as to that fact as well. One form suffices for two separate events; a suspect's obstruction of justice and an officer's use of force upon a suspect. It is reasonable to conclude from this that every suspect against whom force is used is necessarily charged with obstruction of justice.

This practice is a tacit authorization of use of force. Every time a deputy uses force upon a suspect, regardless of whether that force is appropriate or not, the force is automatically justified by allegations of resistance. This policy on its face is deliberately indifferent to the possibility that a deputy's use of force on occasion may not be a result of a suspect's obstruction of justice. It creates a system in which a deputy's use of force upon a civilian will almost always automatically be appropriate.

Moreover, it was reasonable for the jury to conclude that Lee County deputies approached any encounter with civilians secure in the knowledge that their defense to allegations of excessive force was built into the custom of the Lee County Sheriff's Department by the Use of Force/Obstruction of Justice report. Any use of force was authorized to the extent needed to overcome the obstruction of justice that would necessarily be charged if force were used. Such a circularly reasoned, yet reassuring, custom is certainly a "tacit authorization" of police misconduct that is prohibited by *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir.1987).

A single violation of constitutional rights does not amount to an official policy or custom resulting in the deprivation of an individual's constitutional rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). However, as the Eleventh Circuit has noted "a single constitutional violation may result in municipal liability where there is "sufficient independent proof that the moving force of the violation was a municipal policy or custom."" *Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir. 1993). The "policy or custom" requirement of policymaker liability requires "at the very least an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. at 823, 105 S.Ct. at 2436. This affirmative link is established by asking on the basis of the evidence at trial:

> "Would the injury have been avoided had the employee been trained [and supervised and disciplined] under a program that was not deficient in the identified respects?"

*Vineyard v. County of Murray*, 990 F.2d at 1214, *citing Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

In this case, that affirmative link was established by two separate lines of evidence— pervasive ignorance of promulgated policy and the deliberate conflation of Use of Force and Obstruction of Justice Reports. The injury could have been avoided if Defendant Curtis had been familiar with a system in which investigations into use of force were pursued, and charging a recipient of force

with resisting arrest was not a matter of course.

Certainly Defendants are correct when they argue that there was a sufficient evidentiary basis from which the jury could have concluded that Sheriff McDougall is not liable. However, viewing all of the evidence in the light most favorable to the non-moving party, this Court also finds a sufficient evidentiary basis from which to conclude that the Sheriff is liable.

In *Rivas*, 940 F.2d at 1491, the Eleventh Circuit upheld a District Court's finding of liability of a sheriff for maintaining a policy or custom in deliberate indifference to civil rights. The sheriff was not personally involved in the plaintiff's false arrest which formed the basis for the *Rivas* complaint. He, however,

> was directly responsible for formulating policies concerning correct and adequate identification of suspects and ensuring that suspects are accounted for while incarcerated. The evidence presented at trial clearly demonstrates that Sheriff Freeman failed to establish such policies. This lack of well-established policies and procedures caused Rivas's arrest....

*Id.* at 1495. The *Rivas* court held that this situation demonstrated not negligence on the part of the sheriff, but deliberate indifference to the plaintiff's constitutional rights. *Id.*, at 1496. The parallels between this reasoning and the reasoning attributable to the jury in the instant case are striking and confirm the conclusion that the verdict cannot now be set aside.

In *Vineyard*, 990 F.2d at 1207, the Eleventh Circuit upheld a jury's verdict against a sheriff in a similar 42 U.S.C. § 1983 claim. The customs or policies of the Sheriff's Office that were the moving force behind the constitutional violation were "inadequate procedures for recording and following up complaints against individual officers." *Id.* The court noted "[t]he manner in which the Sheriff investigated this incident evidences a policy of deliberate indifference to the rights of the county's inhabitants." *Vineyard* involved the investigation of a citizen's complaint against an officer, not an investigation of excessive force used against a suspect.

*Vineyard,* however, does instruct that inadequate procedures and investigations can be affirmative links between a policy or custom and the violation of a citizen's civil rights.

In light of these cases, it is clear that Plaintiff presented sufficient evidence of a custom or policy that caused the violation of Plaintiff's civil rights at the Lee County Sheriff's Office.

### 3. Punitive Damages Against the Sheriff

■ Defendant Sheriff McDougall argued at trial that punitive damages on the § 1983 claim were unavailable against him as Sheriff in light of Fla.Stat. 768.25. His argument is incorrect. Florida Statute 768.25 is irrelevant to the issue of punitive damages in a 42 U.S.C. § 1983 claim. Federal law governs the entitlement to, and the standards for, § 1983 punitive damage awards, as it does compensatory damage awards. State substantive law does not eclipse the Supremacy Clause. *See Gordon v. Norman,* 788 F.2d 1194, 1199 (6th Cir.1986); *Jackson v. Pool Mortgage Co.,* 868 F.2d 1178, 1181 (10th Cir. 1989).

■ Defendant's main contention in his motion before the court is that the $100,000 punitive damage award against him should be set aside under the authority of *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). *City of Newport* held that punitive damages are unavailable against a municipality in a 42 U.S.C. § 1983 action.

It is unlikely that a Florida sheriff can benefit from the *City of Newport* holding.[6] In holding that a municipality cannot be subject to punitive damages under 42 U.S.C. § 1983, the Court relied on its historical finding that municipalities have traditionally been immune to punitive damages at common law, and that Congress in enacting 42 U.S.C. § 1983 expressed no intent to overcome that common law rule. *Id.* at 266, 101 S.Ct. at 2759. The Court reasoned that punitive damages should punish the wrongdoer, and the municipality itself should not bear the burden of the bad-faith conduct of its officers and agents. *Id.* at 267, 101 S.Ct. at 2760:

> A municipality can have no malice independent of the malice of its officials. Damage awards for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself.

*Id.* This analysis is sound for an abstract entity such as a municipality. It however, breaks down when applied to a sheriff. A sheriff is an official who can engage in independent misconduct. Damages are sensibly assessed against him because he is a governmental entity and a person. He can be punished and he can be deterred.

The Sheriff further argues that he is sued in his official capacity, thus the government agency he represents is in fact sued, and punitive damages are therefore unavailable. It is true that those protected by the Elev-

---

6. Because Sheriff McDougall is a county official, he cannot claim Eleventh Amendment immunity. *Hufford,* 912 F.2d at 1341. ("The Eleventh Amendment bars suits in federal court against state agencies.... We must therefore conclude whether Sheriff Rogers is an agent of the state.... We conclude that a Florida Sheriff is a county official."). *See also Rivas,* 940 F.2d at 1495 ("Because the funds used to satisfy assessments of liability against sheriffs and their deputies are not paid from the state's treasury, we hold in this case that the eleventh amendment does not protect Florida sheriffs and deputies from liability for claims brought pursuant to 42 U.S.C. § 1983.")

Nonetheless, the Eleventh Circuit has not spoken to the specific argument Defendant makes herein, that a Sheriff should be treated as a municipality for purposes of barring punitive damages under *Newport,* 453 U.S. at 247, 101 S.Ct. at 2748–50. Moreover, the Circuit noted

before *Hufford* that "[o]ne official may be a state official in the performance of some of his functions and a county official in the performance of others." *Parker v. Williams,* 862 F.2d 1471 (11th Cir.1989). In at least one case the Eleventh Circuit has used precedent concerning municipalities to set standards of liability for sheriffs. *See Rivas,* 940 F.2d at 1495. The standard of liability was based on the municipality's role as head of a law enforcement unit and therefore was transferable to a sheriff as head of a law enforcement unit. It does not moot the distinct role of a sheriff.

Nothing counsels dispositively against the application of *Hufford.* Moreover, the reasoning of *City of Newport* weakens considerably when applied to a sheriff. Even if *Hufford* does not apply, however, or *City of Newport* does, an award of punitive damages is permissible against him because proof at trial created a suit in his personal capacity. *See infra* Part II § A(3).

enth Amendment are immune from punitive damages in their official capacity; punitive damages are available against them only in their individual capacity. This is a matter of sovereign immunity under the Eleventh Amendment. A Florida sheriff, however, cannot claim sovereign immunity in this Circuit. *See supra* n. 6.

Even if the Sheriff can claim sovereign immunity, he cannot benefit from it in a suit against him in his personal capacity. *City of Newport,* 453 U.S. at 266, 101 S.Ct. at 2759. Whether the Sheriff was sued in his individual or personal capacity is unclear from the pleadings.[7] The Supreme Court has noted that " "[t]he course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985) *citing Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 876–77, 83 L.Ed.2d 878 (1985). While Plaintiff seemed to pursue a path to liability under the rubric of "official policy or custom," the evidence presented was applicable to the Sheriff in his personal capacity as well. He signed the Accreditation Manual and was responsible for compliance with it. Plaintiff produced evidence that John McDougall as Sheriff did not receive a memo concerning the use of force. The Plaintiff's hypothesis that non-compliance with the Accreditation Manual was routine was credible. Plaintiff did not seek at trial to confer liability on the Sheriff's Office, he sought to prove that the personal leadership, custom and policy of John McDougall was deliberately indifferent to the civil rights of the citizens of Lee County. In a situation like this, it is impossible to meaningfully distinguish between personal capacity and official capacity and therefore this Court declines to do so.

In *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), the Supreme Court commented on the distinction between personal capacity and official capacity suits:

State officers[8] sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of personal-capacity defendant thus fits comfortably within the statutory term "person."

*Id.* at ——, 112 S.Ct. at 363. Under this analysis, Sheriff McDougall cannot fairly be said to be sued in his official capacity because he does not assume the identity of the governmental entity that employs him, the evidence showed at trial that he in fact creates the governmental entity that employs him.[9] In light of this analysis, it is more than reasonable to conclude that an award of punitive damages against the Sheriff in his personal capacity is not only permissible but warranted.

■ The amount assessed, $100,000, is not so large as to be impermissible. Broad discretion is traditionally accorded to juries in assessing the amount of punitive damages. *City of Newport,* 453 U.S. at 270, 101 S.Ct. at 2761–62. Because a jury verdict of punitive damages may be based on such widely ranging bases as a desire to punish a party for improper conduct and a desire to create a deterrent to similar conduct by others, courts are extremely reluctant to interfere. *See Glover v. Alabama Department of Corrections,* 734 F.2d 691 (11th Cir.1984), *rev'd on other grounds,* 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), *opinion reinstated as to all other holdings,* 776 F.2d 964 (11th Cir. 1985), *citing Adams v. Ford Motor Credit Co.,* 556 F.2d 737, 740 (5th Cir.1977). This is one instance of reluctance to interfere. Plaintiff went from sleeping in his car to receiving a traumatically caused cataract entirely at the hands of the Lee County Sheriff's Department. He testified convincingly that he did nothing to encourage the blows he received. No disciplinary investigation

---

7. The Amended Complaint names John J. McDougall, as Sheriff of the Lee County Sheriff's Department. This heading is not conclusive as to whether he is being sued in his personal capacity, official capacity or both.

8. This analysis of the distinction between individual and personal capacity is only appropriate if the Sheriff is considered a state officer. *But see supra* n. 6.

9. *See supra,* Part II § 2.

ensued. No report with the Sheriff was filed. Moreover, Plaintiff was charged with resisting arrest with violence on the very same piece of paper Defendant Curtis used to explain his use of force.

In this case, as in *Glover*

[t]he jury's award of punitive damages reflects its finding that defendant acted wantonly, willfully, or in reckless disregard for plaintiff's rights.

*Id.* at 691. Thus, the evidence against the Sheriff is a legally sufficient basis upon which to render a verdict of punitive damages against him and that verdict will not be set aside.

### 4. Nominal Damages: The Prevailing Party Determination

■ Defendants further attack the verdict by arguing that the lack of a compensatory damage award precludes the possibility of a nominal damages award against Defendants. Presumably, this argument is made in anticipation of Plaintiff's motion for attorney's fees. "To qualify as a prevailing party, a civil rights plaintiff must obtain some relief on the merits of his claim." *Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Plaintiff in the instant case has obtained that relief in the form of a $100,000 verdict against the Sheriff. Because that verdict stands, there is no need to rely on *Farrar,* — U.S. at —, 113 S.Ct. at 566, holding that nominal damages support a prevailing party determination, nor is there need to apply its proportionality test. However, Plaintiff has substantially prevailed against Sheriff McDougall only on his § 1983 claim, and attorney's fees should be rendered accordingly. *See Garner v. Wal–Mart Stores,* 807 F.2d 1536, 1539–40 (11th Cir. 1987).

■ A jury's failure to award compensatory damages does not affect its ability to render a punitive damages award. *Glover,* 734 F.2d at 694; *see also King v. Macri,* 993 F.2d 294 (2nd Cir.1993). Moreover, the jury's finding of a constitutional violation without an award of nominal damages is correctable by the court by an entry of nominal damages. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Walker*

*v. Anderson Electrical Connectors,* 944 F.2d 841, 845 (11th Cir.1991), *cert. den.,* — U.S. —, 113 S.Ct. 1043, 122 L.Ed.2d 352 (1993). This Court therefore awards Plaintiff one dollar nominal damages against Deputy Curtis and Sheriff McDougall in accordance with the jury's finding of a constitutional violation.

### B. The Battery Claim

#### 1. Justifiable Use of Force Defense to Battery

■ Deputy Curtis argues he was deprived of a jury charge on justifiable use of force as a defense to battery.

Fla.Stat. 776.05 provides that a law enforcement officer is justified in the use of any force which he reasonably believes to be necessary to defend himself or another from bodily harm while making the arrest. Thus, the jury should have been informed that such force as was reasonably necessary to lawfully arrest Mr. Colvin was justified. However, the jury should also have been able to find that if the arrest was not lawful or if more force than reasonably necessary was used, that a battery in fact had occurred.

The jury was charged that

the least intentional touching of the person of another, if accompanied by an intentional use of force constitutes a battery. Where the use of force is authorized, as in the case of a law enforcement officer, the plaintiff must also prove that the defendant intended to cause excessive force or acted with reckless disregard of the consequences of his act or acted with bad faith or with malicious purpose or exhibited wanton and willful disregard of human rights, safety, or property.

Under these instructions, a jury could not have found Curtis liable for battery without considering and rejecting the defense of justification. In order to find Curtis liable for battery, they would have found that plaintiff had proved that one of the five listed conditions obtained. Under any of those conditions, excessive force, reckless disregard of consequences, bad faith, malicious purpose, or disregard of human rights, the defense of justification fails. *See City of Fort Pierce v.*

*Cooper,* 190 So.2d 12, 14 (Fla. 4th D.C.A. 1966) ("If the officer exceeds the amount of force he is privileged to use under the circumstances, he is liable for only so much of the force as is excessive.") These conditions, moreover, had to be proved over and above Plaintiff's proof of battery and in full consideration of the deputy's authorization to use force. Thus, the jury was adequately informed of the findings necessary to sustain a determination of liability on the battery claim.

### 2. Resisting Arrest Charge Pre-empts Battery Claim

■ Defendant Curtis also argues that plaintiff resisted arrest with violence and thus is barred from bringing a battery claim. Fla.Stat. 768.28(12). Whether or not Plaintiff's arrest was lawful or plaintiff actually resisted arrest were questions of fact and therefore properly before the jury. The applicability of Fla.Stat. 768.28(12) was contingent on factual determinations of the actions of the Plaintiff at the time of the arrest. If the jury had found that Plaintiff resisted arrest with violence, under the instructions given they could not have found that a battery occurred unless the force used upon him exceeded the force necessary to arrest him. Thus, Defendant Curtis was adequately protected by the provisions of Stat. 768.28(12) by the instructions given. Moreover, there was more than a sufficient basis in evidence upon which the jury could have determined that the plaintiff did not resist arrest with violence or determined that the arrest of Plaintiff was unlawful.

### 3. The Punitive Damage Award

Defendants argue punitive damages cannot be awarded on this pendent state claim of battery against Curtis because he was acting within the scope of his employment and they cannot be awarded against the Sheriff because Fla.Stat. 768.28(5) prohibits an award of punitive damages against a state agent.

■ The first claim is that punitive damages are unavailable against Defendant Curtis because he was acting within the scope of

his employment. Fla.Stat. 768.28(9)a provides in relevant part:

> [n]o officer, employee or agent of the state or of any of its subdivisions shall be held personally liable in tort ... unless such officer, employee or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee or agent is an employee....

The jury answered a special interrogatory inquiring whether Defendant Curtis had acted in bad faith. They found that he did not. During the charge conference, the Court decided that the question pertaining to bad faith sufficiently covered the three statutory grounds prohibiting personal liability. Thus, Defendant Curtis is not personally liable for either the $20,000 compensatory damage award or the $9,000 punitive damage award. Liability therefore accrues as a matter of law under Fla.Stat. 768.28(9)(a) to the Sheriff, the head of Defendant Curtis's employing entity. *See Richardson v. City of Pompano Beach,* 511 So.2d 1121 (Fla. 4th D.C.A. 1987).

■ The Sheriff argues further, however, that he cannot be liable for the $9,000 punitive damages under Fla.Stat. 768.28(5).[10] That statute provides

> The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but the liability shall not include punitive damages or interest for the period before judgment.

The question becomes whether 768.28(9)(a), which requires respondeat superior liability for torts committed in the scope of employment, is limited by 768.28(5), which prohibits punitive damages. Florida state cases indi-

---

10. The $20,000 compensatory damage award is viable under this statute.

cate the prohibition against punitive damages in 768.28(5) is controlling. *See Cauley v. Jacksonville,* 403 So.2d 379 (Fla.1981) (upholding the constitutionality of Fla.Stat. 768.-28(5)); *Sebring Utilities Commission v. Sicher,* 509 So.2d 968 (Fla. 2d DCA 1987). For that reason, the $9,000 punitive damage award on the pendent state claim of battery must be set aside.

### C. The Photograph of Plaintiff's Back.

■ Defendants argue prejudicial error occurred when the Court admitted into evidence a photograph of Plaintiff's back. They complain that Plaintiff did not produce the photograph until after the date set by the court for completion of discovery. Defendants argue that they were "overwhelmingly prejudiced" as a result of admission of the photo into evidence because it was evidence that countered Defendant Curtis' testimony that he only delivered one blow to Plaintiff with the baton. Relying on Rule 37(b)(2)(B) Fed.R.Civ.P., Defendants maintain that the court should have excluded the photo.

The fact that Plaintiff did not turn over the photograph to Defendants before the court-ordered completion of discovery is of no moment. The remedy Defendants seek under Fed.R.Civ.P. 32, exclusion of the photograph, is a sanction against the plaintiff to be executed in the Court's discretion. Use of Rule 32 as a grounds for post-trial relief is therefore utterly inappropriate.

■ The admission of a particular item into evidence will only be grounds for post-trial relief if the party seeking relief can show that the Court abused its broad discretion and that the ruling adversely affected the party's substantial rights. *Woods v. Burlington Northern R. Co.,* 768 F.2d 1287 (11th Cir.1985), *rev'd on other grounds,* 480 U.S. 1, 107 S.Ct. 967, 94 L.Ed.2d 1, *opinion and judgment on all other grounds reinstated by* 818 F.2d 753 (1987). The Court ruled at trial that the photograph of Plaintiff's back was admissible, and that pursuant to Rule 403 of the Fed.R.Evid. its admission caused no unfair prejudice to the Defendants. The photograph was consonant with both Plaintiff's and Roger Flint's testimony concerning his encounter with Deputy Curtis. It fairly

supported Plaintiff's case and was relevant to the issues in controversy. *See Id.,* at 1291. Thus, Defendants fail to make the requisite showing of prejudice as a ground for granting a new trial or judgment as a matter of law.

### D. Jury findings on the Form of Verdict are in conflict and cannot be reconciled.

Defendants argue without specification that the Form of Verdict as rendered by the jury is inconsistent. It is inconsistent that the jury found that Defendant Curtis did not act in bad faith, yet they awarded Plaintiff punitive damages of $9,000. This inconsistency in the verdict has been corrected as a matter of law. *See supra Sec.* B(3). As to the remaining awards, the jury found that Defendant Curtis committed a battery and that he violated Plaintiff's right to be free of excessive force in the effecting of his arrest in violation of 42 U.S.C. § 1983. They also found the Sheriff liable for this constitutional violation through a custom or policy in violation of Plaintiff's civil rights. Because there is no inconsistency in these findings. Defendants' allegation affords them no ground for relief.

### E. Plaintiff's counsel created impression on jury that Sheriff was trying to avoid being examined.

This argument is merely an observation, not a reason for a new trial. The presence or absence of a party to a civil suit is not beyond the purview of juror consideration simply because that consideration is impossible to avoid. Plaintiff's counsel alluded to the Sheriff's absence but it was a fact of which the jury was aware. Thus, no unfair prejudice to Defendant McDougall accrued as a result of Plaintiff's counsel's actions.

### III. Conclusion

The $9,000 in punitive damages awarded Plaintiff on the pendent state claim of battery must be set aside as a matter of law. In accordance with the jury's finding of a constitutional violation, one dollar nominal damages will be entered against Deputy Curtis and Sheriff McDougall on the excessive force

claim. The remaining verdict against Defendants will not be modified by granting judgment as a matter of law or a new trial because on all other matters there is a legally sufficient evidentiary basis for the jury to have found for that party with respect to that issue. The additional arguments submitted by Defendants present no ground for relief.

Plaintiff's counsel has moved for attorney's fees. Plaintiff is a prevailing party in this litigation within the requirements of 42 U.S.C. § 1988. *See Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Thus, the matter of fees is hereby referred to Magistrate Judge Swartz to hear and report, unless parties can agree to let the magistrate decide these issues. Judgment will be entered when a determination is made as to attorney's fees and costs.

So Ordered.