**Forest CARD Plaintiff**

v.

**MIAMI–DADE COUNTY FLORIDA Defendant**

**No. 98–0009–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

May 29, 2001.

---

psychological evaluation that was never performed. He further contends that his continued detention was caused by the County's lack of a policy or procedure to ensure timely psychological evaluations for inmates in its custody. Federal jurisdiction exists pursuant to 28 U.S.C. §§ 1331 & 1367.

The County has moved for summary judgment on both claims. Mr. Card, in turn, has filed a cross-motion for partial summary judgment on liability. Because no reasonable jury could find that the County was deliberately indifferent to Mr. Card's constitutional rights, or that the County falsely imprisoned Mr. Card, the County is entitled to judgment as a matter of law. Accordingly, the County's motion for summary judgment [D.E. 91] is GRANTED, and Mr. Card's cross-motion [D.E. 88] is DENIED.[1]

Jeffrey Norkin, Miami, FL, for plaintiff.

Jason Bloch, Stephen P. Clark, Miami, FL, for defendant.

## ORDER GRANTING MIAMI-DADE COUNTY'S MOTION FOR SUMMARY JUDGMENT

JORDAN, District Judge.

Forest Card sues Miami–Dade County for common law false imprisonment and violation of his civil rights under 42 U.S.C. § 1983. He alleges that, after his arrest in 1993 for reckless driving while under the influence of alcohol, he languished in jail for 27 days waiting for a court-ordered

### I. RELEVANT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett,*

---

1. At calendar call, I informed counsel that I was denying the County's motion on Mr. Card's § 1983 claim. But after further reviewing *Board of County Commissioners v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997), and *Gold v. City of Miami,* 151 F.3d 1346 (11th Cir.1998), I conclude that the § 1983 claim, like the common law false imprisonment claim, cannot survive summary judgment.

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir.1999).

## II. RELEVANT FACTS

On December 20, 1993, Mr. Card was arrested in Miami–Dade County by a City of Miami police officer for reckless driving while under the influence of alcohol. *See* Arrest Form [D.E. 90, Exh B] (Dec. 20, 1993). Mr. Card's blood alcohol level was within the legal limits at .040 and .042 on a breathalyser test administered by the Miami Police Department. *See* Breath Test Result Affidavit [D.E. 90, Exh. C] (Dec. 20, 1993). Mr. Card was subsequently processed by the County Department of Corrections into a jail facility. *See* Jail Booking Record at 1 [D.E. 90, Exh. D] (Dec. 20, 1993).

### A. MR. CARD'S MEDICAL SCREENING AND INITIAL APPEARANCE

As part of the routine intake procedure, the County conducted a medical screening of Mr. Card. *See* Medical History and Physical Assessment [D.E. 90, Exh. E] (Dec. 20, 1993). The County contends, and some documents indicate, that Mr. Card was voicing suicidal thoughts, and was therefore placed in protective custody. *See id.;* Progress Record [D.E. 92, Exh. D] (Dec. 20, 1993); Affidavit of Kim Smith ¶ 2 [D.E. 101] (August 17, 2000). Mr. Card disputes this contention, asserting that he had no suicidal thoughts, much less voiced any in the medical screening. *See* Deposition of Forest Card at 33–34 [D.E. 36, Exh. 1] (July 22, 1998). In any event,

the County placed Mr. Card on suicide watch. *See* County's Statement of Facts ¶ 5 [D.E. 93] (July 14, 2000).

Bond was set at a hearing on December 21, 1993, but Mr. Card was unable to post it. According to court records, Judge Pineiro appointed a public defender to represent Mr. Card. The public defender demanded discovery on behalf of Mr. Card and requested a jury trial. *See* Appendix [D.E. 69, Exh. D] (Dec. 21, 1993). Mr. Card, though, maintains that he never went before Judge Pineiro and was not provided with counsel at that time. *See* Card Deposition at 37, 42, 105. Two additional charges—failure to sign a summons and drunk and disorderly conduct—were filed against Mr. Card on December 23, 1993, and were both dismissed for time served the following day. *See* Plaintiff's Statement of Facts ¶ 5 [D.E. 89] (Jul. 14, 2000).

### B. THE ORDER FOR A PSYCHOLOGICAL EVALUATION

On December 29, 1993, Mr. Card appeared before Judge Deehl, who set the case for trial, and ordered Mr. Card released on his own recognizance. *See id.* ¶ 6. An unidentified party, however, moved for a psychiatric evaluation of Mr. Card. *See id.* Without holding a hearing on this request, Judge Deehl ordered that Mr. Card be detained pending an inpatient psychiatric evaluation, which was to be arranged immediately. The examination, pursuant to Judge Deehl's order, was to take place at the County jail or at Jackson Memorial Hospital ("JMH"), "within the discretion" of JMH's staff doctors.[2] The sheriff was ordered to produce Mr. Card

---

**2.** JMH is part of the County's Public Health Trust, a corporate public body which, among other things, makes recommendations to the

County concerning the provision of medical care. *See* Miami–Dade County Code § 25A–1 *et seq.* The County provides funding to the

for the evaluation, and following the evaluation, JMH's staff doctors were to submit a report. Judge Deehl's evaluation order indicates at the bottom that copies of the order were sent to the Department of Corrections, JMH, and the staff doctors. *See* Order for Psychiatric Evaluation [D.E. 90, Exh. F] (Dec. 29, 1993). The booking records from the Department of Corrections contain an entry for Judge Deehl's December 29, 1993, order, together with the phrase "ROR" (released on own recognizance), thereby indicating that the Department was aware of the order. *See* Jail Booking Record at 1.

The County contends that Mr. Card was found to be competent in a psychiatric examination conducted two weeks later, on January 12, 1994. *See* Evaluation [D.E. 90, Exh. K] (Jan. 12, 1994). Mr. Card, on the other hand, maintains that no medical examination was ever conducted. *See* Card Deposition at 84. While he was in custody, Mr. Card did not file any grievances or lodge any complaints concerning his continued detention. *See id.* at 92–94. Nor, apparently, did his public defender.

On January 24, 1994, Judge Deehl signed an order for Mr. Card's immediate release, and Mr. Card was released the following day. The charges against Mr. Card were nolle prossed by the state attorney in 1996.

### C. THE ROLE OF MENTAL HEALTH ADMINISTRATOR'S OFFICE

Bertha Borge, the Assistant Director of the Mental Health Administrator's Office for Florida's Eleventh Judicial Circuit Court, testified that her office is responsi-

Trust "for the cost of services and supplies provided to medically indigent persons." *See*

ble for coordinating psychiatric evaluations of pre-trial detainees such as Mr. Card. *See* Affidavit of Bertha Borge ¶¶ 1–2 [D.E. 92, Exh. H] (July 17, 2000). According to Ms. Borge, her office contacts JMH, which assigns the case to a staff doctor, who then individually schedules an evaluation. *See id.* ¶ 3. Ms. Borge says that the County Department of Corrections has no role in scheduling such evaluations and is only responsible for facilitating the evaluations by making the detainee available. *See id.* In Ms. Borge's view, the lag between December 29, 1993, order and the January 12, 1994, evaluation of Mr. Card was not unreasonable. *See id.* ¶ 5.

### D. THE POSITION OF THE COUNTY DEPARTMENT OF CORRECTIONS

Ronald Kovacs, the Chief of Special Services for the County Department of Corrections, testified that the Department has no control over the provision of court-ordered psychiatric evaluations. *See* Deposition of Ronald Kovacs at 4 [D.E. 90, Exh. J] (July 5, 2000). John Gagliardi, a Miami–Dade Corrections Captain and Bureau Supervisor, also testified that the Department is not responsible for ensuring that court-ordered psychiatric evaluations are carried out. *See* Deposition of John Gagliardi at 3, 9 [D.E. 90, Exh. I] (July 5, 2000). Captain Gagliardi, answering a hypothetical question, agreed that it would not be the Department's responsibility if a court-ordered evaluation that was supposed to be performed within five days was not performed for two years. *See id.* at 10.

### III. THE CIVIL RIGHTS CLAIM

Mr. Card asserts that the County is responsible for his continued detention,

*id.* at § 25A–5(a).

which violated his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. Mr. Card alleges that his rights were violated by the 27–day detention pending the psychiatric evaluation, as well as the one-day delay in processing his release. Mr. Card points out that Judge Deehl ordered his evaluation to take place "immediately," and that the County should have, at a minimum, complied with Florida's involuntary commitment provisions.

Because I find that Mr. Card's constitutional rights were violated, if at all, by the 27–day detention, that is the focus of my analysis. Mr. Card's claim that the one-day delay in processing his release amounts to a due process violation is simply not colorable. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (finding that three-day detention due to mistaken identification was not unconstitutional).

The County seeks summary judgment on Mr. Card's civil rights claim. First, the County argues that Mr. Card's constitutional rights were not violated, and that even if they were, it was not the County which violated them. Second, the County asserts that it was not acting pursuant to an official policy or custom, and therefore municipal liability cannot be imposed under § 1983.

■ As the County correctly points out, the rights of pre-trial detainees are properly evaluated under the due process clause of the Fourteenth Amendment, rather than the Fourth or Eighth Amendments. *See City of Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103

S.Ct. 2979, 77 L.Ed.2d 605 (1983); *Lancaster v. Monroe County,* 116 F.3d 1419, 1425 n. 6 (11th Cir.1997); *Wilkins v. May,* 872 F.2d 190, 192–93 (7th Cir.1989). To impose liability on the County for failing to act to preserve a constitutional right under § 1983, Mr. Card must establish (1) that his constitutional rights were violated; (2) that the County had a policy or custom that constituted a deliberate indifference to his constitutional right; and (3) that the violation was caused by the policy or custom. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). *See also Blumel v. Mylander,* 954 F.Supp. 1547, 1554 (M.D.Fla.1997) (applying these factors).

Because of the summary judgment posture, I assume several facts in Mr. Card's favor. First, I assume that Mr. Card was never provided any hearing concerning the need for a psychological evaluation. Second, I assume that no one ever performed a psychological evaluation on Mr. Card. Third, I assume that Mr. Card was not provided with counsel prior to his release on January 25, 1994.

### A. PROCEDURAL DUE PROCESS [3]

■ Had it not been for the court-ordered psychological evaluation, Mr. Card would have been released on December 29, 1993. There can be no doubt that Mr. Card's continued detention through January 24, 1994, for an evaluation that I assume (for summary judgment purposes) did not take place, affected a liberty interest protected by the Fourteenth Amendment. *See, e.g., Vitek v. Jones,* 445 U.S. 480, 491–94, 100 S.Ct. 1254, 63 L.Ed.2d 552

---

**3.** The County's motion for summary judgment addresses both substantive and procedural due process. Neither Mr. Card's complaint nor his cross-motion for summary judgment, however, raise a substantive due process claim. Accordingly, I will analyze Mr. Card's § 1983 claim only within the rubric of procedural due process.

(1980) ("[T]he transfer of a [convicted] prisoner from a prison to a mental hospital must be accompanied by appropriate procedural protections."); *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) ("At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."); *Lynch v. Baxley,* 744 F.2d 1452, 1463 (11th Cir.1984) ("We forbid the use of jails for the purpose of detaining persons awaiting involuntary commitment proceedings, finding that to do so violates those persons' substantive and procedural due process rights."). The due process clause is therefore implicated by Mr. Card's prolonged detention. *See generally Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("[T]he Court has usually held that the Constitution requires some kind of a hearing *before* the state deprives a person of liberty or property.") (emphasis in original).

■ To determine whether a procedural due process violation occurred, a court must decide "what process the state provided and whether it was constitutionally adequate." *Id.* at 126, 110 S.Ct. 975. "This inquiry... examine[s] the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by any statute or tort law." *Id.*

■ For summary judgment purposes, I assume, as I must, that Mr. Card was never provided any sort of a hearing to determine whether a psychological evaluation was warranted, and was never given a psychological evaluation. The County nevertheless argues that Mr. Card cannot prevail under a procedural due process theory because post-deprivation state law remedies are available for him to vindicate his rights. In determining the relevance of such remedies, the initial question is whether the conduct complained of was random and unauthorized. *See, e.g., Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("[The due process clause] is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."). If the alleged violation was random and unauthorized, post-deprivation remedies are the only ones the state can reasonably provide, and thus are the only process due under the Constitution. *See Zinermon,* 494 U.S. at 128, 110 S.Ct. 975; *Parratt v. Taylor,* 451 U.S. 527, 538–39, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). If the violation is neither random nor unauthorized, pre-deprivation remedies are practicable and post-deprivation remedies become constitutionally irrelevant. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433–35, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

■ When a government actor deprives an individual of liberty by violating a state law which, if complied with, would have provided pre-deprivation process, that person has suffered a procedural due process violation. *See Zinermon,* 494 U.S. at 138, 110 S.Ct. 975. Because Mr. Card was deprived of his liberty pending a court-ordered psychological evaluation, and because Florida law suggests that procedural deprivation remedies were available, his detention was not random or unauthorized. *Id.* at 135–38, 110 S.Ct. 975.

Florida has a statutory scheme governing pre-trial detention and release. The presumption is in favor of pre-trial release, unless the defendant has previously

violated conditions of release, has threatened any victim, witness, juror, or judicial official, is charged with trafficking controlled substances, or is charged with a "dangerous crime." FLA. STAT. § 907.041(4)(b). Even if the defendant meets one of these four criteria, the court must find that no condition of release would sufficiently address the problem. A court may only order pre-trial detention after a hearing at which the state bears the burden of demonstrating the need for pre-trial detention. *See* Fla. R.Crim. P. 3.131(b)(1). Furthermore, "[u]nless charged with a capital offense or an offense punishable by life imprisonment *and* the proof of guilt is evident or the presumption great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to release on reasonable conditions." § 3.131(a) (emphasis added). In determining appropriate conditions of release, if any, the court may take into consideration the defendant's mental condition, among other factors. *See* § 3.131(b)(3). As noted earlier, Judge Deehl allowed Mr. Card to be released on his own recognizance, but subsequently ordered him held pending a psychological evaluation.

Rule 3.210 of the Florida Rules of Criminal Procedure governs competency standards applied to criminal defendants about to stand trial. Rule 3.210 provides that, if at any material stage of the proceeding the court has reasonable ground to believe that the defendant is incompetent, it shall enter an order setting a hearing, to be held within 20 days, and requiring the examination of the defendant by at least two experts. *See* Fla. R.Crim. P. 3.210(b). A defendant who is on pre-trial release may be ordered to attend the examination as a condition of release. *See* § 3.210(c). A defendant may be taken into custody

pending the evaluation if the court determines that the defendant will not submit to, or is not likely to attend, the evaluation. *See id.* A motion for an evaluation shall not otherwise affect the defendant's right to release. *See id.*

It is unclear from this sparse record whether the request by the unidentified party for a psychological evaluation of Mr. Card was made under Rule 3.210. What is abundantly clear is that this procedure was not followed at all. There is no finding on the record that Mr. Card was unwilling to attend a non-custodial psychiatric evaluation. Moreover, there is no evidence that Judge Deehl or any other judge held a competency hearing, and there is no indication that the evaluation was aimed at determining Mr. Card's competence to stand trial.

Florida law also provides a mechanism for the involuntary commitment of the mentally ill, commonly referred to as the Baker Act. *See* FLA. STAT. §§ 394.451 *et seq.* The Act protects the rights of those committed to mental institutions against their will by requiring a competency evaluation within 72 hours. *See* § 394.463. The Act mandates such an evaluation, even for patients who are unable to make a determination that evaluation is necessary. *See* § 394.463(1)(a).

Again, there is no evidence that anyone, including the County, complied with the Baker Act. Nothing in the record indicates that Mr. Card was asked whether he would submit to an evaluation, and there is no suggestion that he was unable to make that determination for himself. More importantly, Mr. Card was not evaluated within 72 hours. In fact, even assuming the County's version of events is correct, almost three weeks passed before the evaluation took place.

As best I can tell from the record before me, Mr. Card was not provided or offered the procedures set forth in § 907.041, Rules 3.131 or 3.210, or Florida's Baker Act. Although none of these provisions speak directly to Mr. Card's situation, they do provide a guide as to the available policies and laws of the state of Florida in dealing with pre-trial detainees held solely pending a psychiatric evaluation. Because Mr. Card's detention was not random or unauthorized under *Zinermon*, I find that there is an issue of fact as to whether Mr. Card was deprived of his right to procedural due process.

## B. MUNICIPAL LIABILITY UNDER § 1983

Although Mr. Card's procedural due process rights may have been violated, it does not necessarily follow that a trial is warranted. Mr. Card has sued only the County, and I now turn to the question of whether this record contains sufficient evidence to permit the municipal liability claim to go to a jury. The question is whether Mr. Card has amassed enough evidence to convince a jury that the County is legally responsible for any constitutional violation.

 It is well settled, and undisputed here, that municipalities and counties can be sued directly under 42 U.S.C. § 1983. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Municipalities are not subject to liability on a *respondeat superior* theory, as only direct liability may be imposed. *See id.* at 691, 98 S.Ct. 2018. Municipalities can be held liable only if the unconstitutional action implements an official municipal policy or is pursuant to a governmental custom. *See id.* Although § 1983 does not contain an independent state of mind requirement,

the Supreme Court has held that a municipality at the very least must act "deliberately" in order for liability to be imposed. *See Board of County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

 "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997) (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018). A custom is a practice that is so settled and permanent that it takes on the force of law. *Id.* (citing *Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018). " 'To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.' " *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1999) (quoting *Depew v. City of St. Mary's*, 787 F.2d 1496, 1499 (11th Cir.1986)).

 Municipal liability may also be imposed when the absence of a policy establishing appropriate procedures to ensure against violation of a person's constitutional rights results in a violation of those rights. *See, e.g., Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991) (finding liability where county failed to establish procedures regarding identification of arrestees, warrantless searches, and computer-based information checks). Mr. Card, relying on *Rivas*, alleges that the

County did not have policies or procedures to ensure that court-ordered psychiatric evaluations would be timely performed.

To establish the absence of a policy under *Rivas,* Mr. Card has submitted the testimony of Mr. Kovacs, the Chief of Special Services for the Department of Corrections, and Mr. Gagliardi, a Miami–Dade Corrections Bureau Supervisor Captain. Chief Kovacs testified that the Department of Corrections has no control over the provision of court-ordered psychiatric evaluations. Captain Gagliardi testified that the Department has no responsibility to see that court-ordered psychiatric evaluations are carried out. Answering a hypothetical question, Captain Gagliardi agreed that it would not be Corrections' responsibility if a court-ordered evaluation that was supposed to be performed within five days was not performed for two years.

The County argues that it was neither equipped nor responsible for arranging Mr. Card's evaluation or ensuring that it was performed. The County relies on the testimony of Ms. Borge, who testified that the Mental Health Administrator's Office is responsible for coordinating court-ordered psychiatric evaluations of criminal defendants. The County asserts that Ms. Borge's affidavit demonstrates that it is the Eleventh Judicial Circuit, rather than the County, that bears responsibility for ensuring that such evaluations are timely performed. The County's position finds some support in *Brooks v. George County,* 84 F.3d 157, 168–69 (5th Cir.1996) (upholding grant of summary judgment in favor of court clerk in § 1983 action by a plaintiff who had been held in custody eight months after charges against him dropped—although the plaintiff claimed that the clerk had a policy of failing to send dismissal order to defendants or their counsel, the

judge, and not the clerk, was the policy maker for the county court system).

Although Ms. Borge states that her office arranges and coordinates the evaluations, I am unconvinced on this record that the County is relieved of all constitutional responsibility for ensuring that inmates over whom it has physical custody are moved as promptly as possible through the system. This is particularly the case due to the fact that the psychiatric evaluations are conducted by staff doctors at JMH, which is part of the County's Public Health Trust. The County has put forth no evidence regarding any policies or procedures it has adopted to prevent detainees like Mr. Card from falling through the cracks and languishing in jail while awaiting an evaluations. It is possible that the County has such policies or procedures, but none have been proffered.

Mr. Card cites *Blumel,* 954 F.Supp. at 1547, for the proposition that it is a municipality's responsibility to ensure that an inmate is not held in violation of his or her constitutional rights. The plaintiff in *Blumel* was held for 30 days without a probable cause hearing, and suffered a deprivation of his right to procedural due process. *See id.* at 1555–56. *Blumel* held that the county's official policymaker was responsible for the prolonged detention, and specifically distinguished the situation in which a prisoner is held pursuant to a judicial commitment order. *See id.* at 1561 (citing *United States ex rel. Bailey v. Askew,* 486 F.2d 134, 135 (5th Cir.1973) ("[A] jailer cannot be held liable for an error in an order of commitment which is patently proper."); *Tucker v. City of Montgomery Bd. of Comm'rs,* 410 F.Supp. 494, 511 (M.D.Ala.1976) (involving a city jail warden who "accepted plaintiffs for incarceration pursuant to judicial orders of commit-

ment"); *State of La. ex rel. Purkey v. Ciolino*, 393 F.Supp. 102, 108 (E.D.La. 1975) (deeming a § 1983 claim against a state prison warden frivolous because "prison wardens are immune from ... damages for merely asserting custody over a prisoner pursuant to a valid commitment order")). That, of course, is the situation here, as Mr. Card remained in custody pursuant to Judge Deehl's order. *Blumel* is therefore distinguishable.

Mr. Card also relies on the Eleventh Circuit's decision in *Ancata v. Prison Health Services*, 769 F.2d 700, 705 (11th Cir.1985), to support his argument that the County cannot avoid liability in a § 1983 suit by delegating or contracting for a prisoner's medical care. *Ancata* held that municipal governments have a non-delegable duty to provide medical care to incarcerated individuals, but the Eleventh Circuit noted that any constitutional tort for which a plaintiff seeks redress must be the result of an official policy or custom of the contracting entity. *See id.* at 705 & n. 8. The County argues that the psychiatric evaluation was not the Department of Corrections' responsibility, and therefore *Ancata* is not applicable. I conclude, however, that this record is insufficient to determine whether the County, as the umbrella over the Department of Corrections, is ultimately responsible for ensuring compliance with court evaluation orders. Ms. Borge's affidavit indicates that the Mental Health Administrator's Office is responsible for arranging the evaluation, but there is no evidence of any policy or procedure the County may have to ensure that such arrangements are made. *See* Borge Affidavit ¶ 2. Furthermore, the fact that the Department of Corrections may not have been responsible for *arranging* the evaluation does not lead to the inevitable conclusion that the County had no responsibility to ensure that its inmates' constitutional rights were not violated by JMH, the entity in the Public Health Trust ultimately responsible for evaluating inmates. *See Ancata*, 769 F.2d at 706 & n. 11. It is no answer to an inmate in Mr. Card's position that the County, the entity holding him against his will, has no responsibility to ensure that his constitutional rights are not violated by his continued presence in its custody.

The County further argues that to impose municipal liability, Mr. Card must show that the County knew of his alleged illegal detention, that the County was deliberately indifferent to his plight, and that there was a causal connection between the County's response to the problem and the unjustified detention. *See Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir.1989). In *Sample*, the plaintiff was held for nine months after he should have been released, despite his complaints to the prison's senior records officer that he was being detained after the expiration of his sentence. *Id.* at 1105. The prison, however, clearly had policies in place to calculate sentences and release dates. The problem in *Sample* was that the official charged with that responsibility failed to properly discharge his duty, which the Third Circuit agreed constituted deliberate indifference in light of the prisoner's complaints. *See id.* at 1111–12 (affirming factual findings of the district court).

I agree with the County. Given the undisputed fact that the Mental Health Administrator's Office—a part of the state court system—is responsible for arranging psychological evaluations, the County's failure to have a policy, procedure, or system in place to make sure that inmates like Mr. Card do not fall through the cracks is not facially unconstitutional.

Thus, Mr. Card must establish, under § 1983, that the County's lack of a policy or procedure was deliberately indifferent as to its known or obvious consequences:

> [Q]uite apart from the state of mind required to establish the underlying constitutional violation . . . a plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate [his] rights must demonstrate that the municipal action was taken with "deliberate indifference" as to its known or obvious consequences. A showing of simple negligence or even heightened negligence will not suffice.

*Brown,* 520 U.S. at 407, 117 S.Ct. 1382 (citations omitted). Deliberate indifference can be shown by "continued adherence to an approach that [policymakers] know or should know has failed to prevent tortious conduct" or by "the existence of a pattern of tortious conduct by inadequately trained employees." *Id.* at 407–08, 117 S.Ct. 1382. *Cf. Farmer v. Brennan,* 511 U.S. 825, 839–40, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment.").

Unfortunately for Mr. Card, there is no evidence of deliberate indifference on the part of the County. The County may have been negligent in not concerning itself with court-ordered psychological evaluations, but there is nothing to suggest that the County knew, or should have known, about the obvious consequences of not having a policy or procedure to ensure the timely evaluation of inmates. Mr. Card, for example, has not presented evidence that other inmates had previously languished in jail while awaiting psychological evaluations or that County policymakers had been made aware of the risk of such occurrences. *See Gold v. City of Miami,* 151 F.3d 1346, 1351–53 (11th Cir.1998) (reversing jury verdict in favor of § 1983 plaintiff who alleged that city had policy of inadequate training and supervision of officers in connection with arrests made under disorderly conduct statute—the plaintiff did not present evidence of prior constitutional violations or false arrests involving statute, and evidence that 15% of disorderly conduct charges in five-year period were dismissed or nolle prosed was insufficient to impose municipal liability). Because the Mental Health Administrator's Office is charged with arranging evaluations, and because pre-trial detainees like Mr. Card are normally afforded counsel who can monitor the progress of such evaluations, the risk from the failure of the County to have a policy or procedure to prevent incidents like this one is not so obvious in the abstract as to support a jury finding of deliberate indifference. *See Armstrong v. Squadrito,* 152 F.3d 564, 577–79 (7th Cir. 1998) (holding that jail's will-call system was not deliberately indifferent to detainee's substantive due process rights not to be subject to prolonged detention without court appearance, even though jail merely placed detainees' names on will-call list and left to court the responsibility of ensuring that detainees received expeditious hearing, given back-up plan by which jail accepted formal written complaints from detainees concerning their confinements).

## IV. FALSE IMPRISONMENT

▉▉▉ Mr. Card also claims that his 27–day imprisonment by the County con-

stitutes false imprisonment under Florida law. In Florida, the tort of false imprisonment is identical to the tort of false arrest. *See Rankin v. Evans,* 133 F.3d 1425, 1431 n. 5 (11th Cir.1998); *Weissman v. K–Mart Corp.,* 396 So.2d 1164, 1164 n. 1 (Fla. 3d DCA 1981). An arrest pursuant to a valid warrant, based on probable cause, is an affirmative defense to a false arrest claim. *See Jackson v. Navarro,* 665 So.2d 340, 342 (Fla. 4th DCA 1995). False imprisonment is detention without color of legal authority, *see id.* at 341, and occurs when "there is an improper restraint which is not the result of a judicial proceeding." *Id.* at 342 (citing WILLIAM L. PROSSER, LAW OF TORTS § 119 (4th ed.1971)).

 The County contends that because the arrest was made with probable cause, a fact Mr. Card does not dispute, a claim of false imprisonment cannot lie. Mr. Card's claim, however, is that his imprisonment became unlawful after December 29, 1993 and, not upon his arrest. But it is also undisputed that, after that date, the County held Mr. Card pursuant to a facially valid court order—Judge Deehl's evaluation order. While the policies or procedures the County may or may not have adopted or followed are relevant in determining whether Mr. Card may maintain his § 1983 action, they are irrelevant to whether the County falsely imprisoned him under Florida law. Because the County was holding Mr. Card pursuant to a facially valid court order after December 29, 1993, there was no false imprisonment under Florida law.

Mr. Card's situation is distinguishable from that in *Johnson v. Heinrich,* 543 So.2d 831 (Fla. 2d DCA 1989). In *John-*

*son,* the plaintiff was held, after being stopped for a traffic violation, pursuant to an outstanding warrant issued in Ohio. *See id.* at 832. The next day, Ohio authorities informed the county authorities that Ohio could not make a positive identification of Mr. Johnson, and he should therefore be released. *See id.* The authorities nevertheless held Mr. Johnson for a day and a half after its receipt of Ohio's message. *See id.* The Second District found that this detention, although pursuant to arrest executed on probable cause, raised a question of fact as to reasonableness that could not be decided on summary judgment. *See id.* at 833. Unlike *Johnson,* there is no evidence here that the County unreasonably held Mr. Card after it learned that he should be released. Although the release order for Mr. Card was issued a day before he actually was released, there is no evidence that the delay was anything other than the result of normal administrative delay.[4]

## V. CONCLUSION

What happened to Mr. Card is regrettable, but not every improper deprivation of liberty amounts to a constitutional violation. Although there are material issues of fact as to whether Mr. Card was deprived of his due process rights, there is no evidence from which a jury could reasonably find that the County's failure to have a policy to ensure timely court-ordered psychological evaluations was deliberately indifferent under § 1983. There is also no false imprisonment under Florida law.

Nevertheless, the County and its officials should not feel good about in this

---

4. Mr. Card was released from custody at approximately 4:10 p.m. on January 25, 1994. *See* Jail Booking Record at 1. There is no evidence as to when Judge Deehl signed the January 24, 1994, release order, or when the jail received the release order.

case. Had the County developed some sort of system to prevent incidents like this one, it is unlikely that Mr. Card would have remained in custody as long as he did. It is also not comforting to have a County official opine that the Department of Corrections would not be responsible even if a court-ordered psychological evaluation was not performed for two years. *Cf. Armstrong,* 152 F.3d at 579 ("A policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference."). The next time around, the result for the County may well be different. *Cf. Lawton v. Cochran,* 695 So.2d 1297, 1298 (Fla. 4th DCA 1997) (reversing dismissal of § 1983 complaint filed by former detainee who alleged that, as a result of sheriff's policies and procedures, he was held for 20 months before being brought before a judge).

The County's motion for summary judgment [D.E. 91] is GRANTED. A final judgment will be issued by separate order.